## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## FT. LAUDERDALE DIVISION

DOUGLAS TAYLOR,

     Plaintiff,

v.

                            CASE NO.:

ALLY FINANCIAL, INC.,

     Defendant.

_____/

## COMPLAINT

1.     Unwanted "Robocalls" are the #1 consumer complaint in America today.

2.     The people complaining about harassing robocalls is increasing at an alarming rate. In 2015, 2,125,968 complained to the Federal Trade Commission (FTC) and Federal Communications Commission (FCC), in 2016 this number was 3,401,614 2016 and in 2017 it was 4,501,967.[1]

3.     In May of 2019 alone, Americans were bombarded with a shocking 5.2 *billion* robocalls —an increase by an incredible 370% just since December 2015.[2]

4.     Ally Financial, Inc., robocalled the Plaintiff approximately 100 times.

5.     Ally Financial, Inc., has a corporate policy to robocall people thousands of times.

6.     "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization.  They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991).   Senator Hollings presumably intended to give telephone

---

[1] It is important to recognize these merely reflect the number of individuals that complained to these agencies; the number of people that have been victimized by illegal robocalling abuse could be close to 100,000,000 in the last 3 years

[2] YouMail Robocall Index, available at http://RobocallIndex.com/

subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank*, F.S.B., 746 F. 3d 1242, 1256 (11th Cir. 2014).  Despite the penalties put in place over 26 years ago, robocall abuse continues to skyrocket.

7.      Plaintiff, Douglas Taylor, alleges Defendant, Ally Financial, Inc., robocalled him more than 100 times in stark violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 *et seq.* ("FCCPA").

8.      Robocalls are very inexpensive to make.  As was noted in a Senate hearing on the subject: "With such a cheap and scalable business model, bad actors can blast literally tens of millions of illegal robocalls over the course of a single day at less than 1 cent per minute." *Stopping Fraudulent Robocall Scams: Can More Be Done?: Hearing Before the Subcomm. on Consumer Prot., Prod. Safety, and Ins. of the S. Comm. on Commerce, Sci., and Transp.*, 113 Cong. 113-117 (2013) (statement of Lois Greisman, Assoc. Director, Division of Marketing Practices, Bureau of Consumer Protection, Federal Trade Commission).

9.      The TCPA was enacted to prevent companies like Ally Financial, Inc., from invading American citizens' privacy and prevent illegal robocalls.

10.     Congress enacted the TCPA to prevent real harm.  Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2(10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227; see also *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012) ("The Act bans certain practices invasive of privacy").

11.     According to findings by the FCC—the agency Congress vested with authority to issue regulations implementing the TCPA—such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.  The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

## JURISDICTION AND VENUE

12.     Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. §1331.

13.     Violations described in the Complaint occurred while Plaintiff was in Pompano Beach, FL.

## FACTUAL ALLEGATIONS

14.     Plaintiff is a natural person and citizen of the State of Florida, residing in Riverview, Florida.

15.     Plaintiff is a "consumer" as defined in Florida Statute § 559.55(8).

16.     Plaintiff is an "alleged debtor."

17.     Plaintiff is the "called party." *See Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014); *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

18.     Defendant is a corporation with its principal place of business in Detroit, Michigan, and conducts business in the State of Florida.

19.     Defendant is a "creditor" as defined by Florida Statute § 559.55(5).

20.     The debt that is the subject matter of this complaint is a "consumer debt" as defined by Florida Statute § 559.55(6).

21.     Plaintiff is the regular user and carrier of the cellular telephone number at issue, (954) 822-1138.

22.     Plaintiff was the "called party" during each phone call subject to this lawsuit.

23.     Defendant intentionally harassed and abused Plaintiff on numerous occasions by calling several times during one day, and on back to back days, with such frequency as can reasonably be expected to harass.

24.     Defendant did not have the "express consent" of the Defendant to call his cell phone.

25.     "Express consent" is narrowly construed by the Courts.

26.     It is the Defendant's burden to prove they had "express consent" per the TCPA to call the Plaintiff on his cell phone using an "automatic telephone dialing system" (ATDS).

27.     It is the Defendant's burden to prove they had "express consent" per the TCPA to call the Plaintiff on his cell phone using an ATDS for the account they were calling on.

28.     Defendant was put on notice Plaintiff did not want the Defendant contacting him.

29.     In or about August of 2017, Plaintiff began receiving calls from the Defendant regarding an alleged late payment on an auto loan that had been brought current by Plaintiff. Plaintiff advised the Defendant that he did not owe any payments on this loan, asked the Defendant not to call him anymore, but the Defendant continued to call and harass the Plaintiff for payments he did not owe.

30.     Defendant did not have the express consent of the Plaintiff to call him on the account they called him on.

31.     Plaintiff expressly revoked any express consent Defendant may have mistakenly believed it had for placement of telephone calls to Plaintiff's aforementioned cellular telephone number by the use of an ATDS or a pre-recorded or artificial voice.

32.     Defendant attempted to collect a debt from the Plaintiff by this campaign of telephone calls.

33.     Defendant made at least one call to (954) 822-1138.

34.     Defendant made at least one call to (954) 822-1138 using an ATDS.

35.     Defendant made at least twenty-fuve (25) calls to (954) 822-1138.

36.     Defendant made at least twenty-five (25) calls to (954) 822-1138 using an ATDS.

37.     Defendant made at least forty-five (45) calls to (954) 822-1138.

38.     Defendant made at least forty-five (45) calls to (954) 822-1138 using an ATDS.

39.     Defendant made at least eighty (80) calls to (954) 822-1138.

40.     Defendant made at least eighty (80) calls to (954) 822-1138 using an ATDS.

41.     Defendant made at least one hundred (100) calls to (954) 822-1138.

42.     Defendant made at least one hundred (100) calls to (954) 822-1138 using an ATDS.

43.     Each call the Defendant made to (954) 822-1138 in the last four years was made using an ATDS.

44.     Each call the Defendant made to the Plaintiff's cell phone was done so without the "express permission" of the Plaintiff.

45.     Each call the Defendant made to the Plaintiff was made using an ATDS, which has the capacity to store or produce telephone numbers to be called, without human intervention, using a random or sequential number generator; and to dial such numbers as specified by 47 U.S.C § 227(a)(1).

46.     Many of the calls at issue were placed by the Defendant using a "prerecorded voice," as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A), when the Plaintiff did not answer the phone and a voice mail message was left using a pre-recorded voice.

47.     Plaintiff repeatedly requested the Defendant to stop calling  his cell phone, however, the Defendant continued to make calls.

48.     Defendant has admitted to calling cell phones using an ATDS after that person asked for the calls to stop.

49.     Plaintiff's conversations with the Defendant putting them on notice that he did not want more phone calls were ignored.

50.     Defendant has recorded at least one conversation with the Plaintiff.

51.     Defendant has recorded numerous conversations with the Plaintiff.

52.     Defendant has made approximately one hundred (100) calls to Plaintiff's aforementioned cellular telephone number since in or about August of 2017 which will be established exactly once Defendant turns over their dialer records.

53.     Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of abusive robocalls.

54.     Defendant's phone calls harmed Plaintiff by wasting his time.

55.     Moreover, "wireless customers [like Plaintiff] are charged for incoming calls whether they pay in advance or after the minutes are used."  In re: *Rules Implementing the TCPA of 1991*, 23 FCC Rcd 559, 562 (2007).  Defendant's phone calls harmed Plaintiff by depleting the battery life on his cellular telephone, and by using minutes allocated to Plaintiff by his cellular telephone service provider.

56.     Defendant's corporate policy and procedures are structured as to continue to call individuals like the Plaintiff, despite these individuals revoking any consent the Defendant may have mistakenly believed it had.

57.     Defendant's corporate policy and procedures provided no means for the Plaintiff to have his aforementioned cellular number removed from the call list.

58.     Defendant has a corporate policy of using an ATDS or a prerecorded or artificial voice message to collect debts from individuals such as Plaintiff for its financial benefit.

59.     Plaintiff expressly revoked any consent Defendant may have mistakenly believed it had for placement of telephone calls to Plaintiff's aforementioned cellular telephone by the use of an ATDS or a pre-recorded or artificial voice immediately upon Defendant's placement of the calls.  Making money while breaking the law is considered an incentive to continue violating the TCPA and other state and federal statutes.

60.     None of Defendant's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

61.     Defendant violated the TCPA and FCCPA with respect to the Plaintiff.

62.     Defendant willfully or knowingly violated the TCPA with respect to the Plaintiff.

<u>**COUNT I**</u>
**(Violation of the TCPA)**

63.     Plaintiff incorporates Paragraphs one (1) through sixty-two (62).

64.     Defendant willfully violated the TCPA with respect to the Plaintiff each time they called the Plaintiff after he revoked his consent to be called by them using an ATDS or pre-recorded voice.

65.     Defendant knowingly violated the TCPA with respect to the Plaintiff, especially for each of the auto-dialed calls made to Plaintiff's cellular telephone after Plaintiff revoked his consent to be called by them using an ATDS or pre-recorded voice.

66.     Defendant, Ally Financial, Inc., repeatedly placed non-emergency telephone calls to the wireless telephone number of Plaintiff using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

67.     When Plaintiff would answer the Defendant's calls, he would say 'Hello?' but threre would not be any live person on the line. After a pause, an agent would come on the line and say 'Hello.' This evidences that the Defendant was using a predicitive dialer to automatically place calls to Plaintiff's cellular telephone. A predictive dialer constitutes an ATDS pursuant to the provisions of the TCPA.

68.     On many calls where Plaintiff did not answer his phone, the Defendant used an artificial or pre-recorded voice to leave a message on his cellular phone. This conduct is unlawful and violates the TCPA whether or not the Defendant used an ATDS.

69.     As a result of Defendant's illegal conduct, Plaintiff suffered actual damages and, under § 227(b)(3)(B), is entitled to, inter alia, a minimum of $500.00 in damages for each such violation of the TCPA.

70.     Plaintiff is also entitled to, and does, seek injunctive relief prohibiting Defendant, Ally Financial, Inc., from violating the TCPA in the future.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages and any other such relief the court may deem just and proper.

8

## <u>COUNT II</u>
### (Violation of the FCCPA)

71.    Plaintiff incorporates Paragraphs one (1) through sixty-two (62).

72.    At all times relevant to this action Defendant is subject to and must abide by the law of Florida, including Florida Statute § 559.72.

73.    Defendant has violated Florida Statute § 559.72(7) by willfully communicating with the debtor or any member of his family with such frequency as can reasonably be expected to harass the debtor or his family.

74.    Defendant has violated Florida Statute § 559.72(7) by willfully engaging in other conduct which can reasonably be expected to abuse or harass the debtor or any member of his family.

75.    Defendant has violated Florida Statute § 559.72(9) by attempting to enforce a debt when Defendant knows that the debt is not legitimate or assert the existence of some legal right when Defendant knows that right does not exist.

76.    Defendant's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute §559.77.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder of future illegal conduct, and any other such relief the court may deem just and proper.

Respectfully submitted,

*Geoffrey E. Parmer, Esq.*
**Geoffrey E. Parmer, Esquire**
Florida Bar No. 989258
William "Billy" Peerce Howard, Esquire
Florida Bar No. 0103330
THE CONSUMER PROTECTION FIRM
4030 Henderson Boulevard
Tampa, FL 33629
Telephone: (813) 500-1500 x206
Facsimile:  (813) 435-2369
Geoff@TheConsumerProtectionFirm.com
Billy@TheConsumerProtectionFirm.com
*Attorneys for Plaintiff*